FRANCISCA LUZGARDA GONZÁLEZ SUÁREZ, demandante y peticionaria, *v.* MARCOS A. RODRÍGUEZ ESTRADA, PRESIDENTE DE LA COMISIÓN ESTATAL DE ELECCIONES DE PUERTO RICO, ETC., demandados y recurridos.

*Número:* CE-89-729     *Resuelto:* 10 de noviembre de 1989

*Francisco Quiñones Vizcarrondo*, abogado de la peticionaria; *Miguel Pagán* y *Eliezer Aldarondo Ortiz*, de *Aldarondo, López Bras, Pagán & Ortiz Ballester*, abogados del Comisionado Electoral del Partido Nuevo Progresista, recurrido; *David Rivé Rivera*, abogado del Presidente de la Comisión Estatal de Elecciones, recurrido; *Luis Sánchez Betances*, abogado de Héctor Luis Acevedo, recurrido; *José Ángel Rey* y *José Luis González Castañer*, abogados de Eudaldo Báez Galib, recurrido.

## SENTENCIA

(Regla 50 del Reglamento del Tribunal Supremo)

Recurre ante este Tribunal la Sra. Francisca Luzgarda González Suárez de una resolución y orden del Tribunal Superior, Sala de San Juan, dictada el 30 de octubre de 1989, la cual le ordena enmendar su demanda con el único propósito de acumular como partes a unos mil doscientos ochenta (1,280) electores, cuyos votos no fueron adjudicados por la Comisión Estatal de Elecciones (C.E.E.) en las pasadas elecciones del Municipio de San Juan.

Sostiene la señora González Suárez que, al así hacerlo, erró el tribunal de instancia, pues ella se opuso tenazmente a la misma. Alega, además, que la orden se funda en una con-

solidación inexistente de su demanda con la demanda de impugnación instada por el Sr. José Granados Navedo.(1)

---

(1) No tiene razón la recurrente, señora González Suárez, en su reclamo de que la consolidación de su caso con el del señor Granados Navedo es inexistente.

En su propia solicitud de *certiorari*, pág. 3, ante nos admite que aceptó la consolidación parcial.

Una lectura cuidadosa de la transcripción de la vista de consolidación, celebrada el 15 de agosto de 1989, refleja que el tribunal de instancia hizo claro que en relación con la consolidación, y en lo que respecta al desfile de la prueba, la presentada en el caso de impugnación instado por el señor Granados Navedo y la presentada en el caso de la Sra. Francisca Luzgarda González Suárez sería la *misma*. Transcripción de evidencia, pág. 7.

El tribunal de instancia expresó, además:

"Compañero, lo que estamos . . . aquí no es cuestión de lo que usted quiere, *es que va a desfilar la prueba sobre los derechos de la demandante Francisca Luzgarda González Suárez* a que se le adjudique su voto. No es a que se certifique o se descertifique. Es que no vamos a escuchar la misma prueba en dos ocasiones. Para eso está la Regla 38." (Énfasis suplido.) Transcripción de evidencia, pág. 8.

A ésto el representante legal de la señora González Suárez contestó:

"A esos fines de la consolidación *nosotros estamos de acuerdo en que sea así*, Vuestro Honor, especificando, por supuesto, que la parte demandante llevará la presentación de su prueba." (Énfasis suplido.) Transcripción de evidencia, pág. 8.

De hecho, el Lcdo. Miguel Pagán, abogado del Comisionado Electoral del Partido Nuevo Progresista (P.N.P.), indicó que la prueba que se anunciaría en el caso de ella sería "aquella misma prueba que se ofreció en la Comisión Estatal de Elecciones y *que se va a desfilar en el caso grande de Granados y de Héctor Luis Acevedo para hacer valer los derechos de este elector*". (Énfasis suplido.) Transcripción de evidencia, pág. 3.

Más aún, de la transcripción de la vista en su fondo celebrada el 7 de septiembre de 1989, el licenciado Quiñones Vizcarrondo expresó lo siguiente:

"Como los casos fueron consolidados con los de impugnación de candidato, se está presentando a la testigo por la parte demandante, por el candidato impugnador. En este caso nosotros nos reservamos el derecho a presentar nuestro directo en el momento correspondiente y queremos reservar ese derecho." Transcripción parcial de evidencia, pág. 3.

El abogado de la señora González Suárez no hizo interrogatorio alguno.

Surge, además, que el Lcdo. Carlos Canals, abogado de récord del señor Granados Navedo, fue quien interrogó en el directo a la señora González Suárez para probar sus alegaciones (transcripción parcial de evidencia, pág. 12 y ss.) y quien hizo referencia a la prueba sometida en el caso del señor Granados Navedo (íd., págs. 11, 12 y 14).

Todas las actuaciones anteriores indican que la consolidación fue aceptada por la señora González Suárez y que la prueba traída por ella y la del caso del impugnador, señor Granados Navedo, fueron utilizadas para probar sus alega-

Oportunamente concedimos término a la C.E.E. y a las demás partes para que, a los fines de evaluar la solicitud de *certiorari* presentada por la señora González Suárez, se expresaran sobre lo planteado por ella. En auxilio de nuestra jurisdicción dejamos en suspenso el plazo de cinco (5) días naturales concedidos a la señora González Suárez para enmendar su demanda. Además, instruimos al foro de instancia que certificara la transcripción de evidencia de la vista celebrada el 15 de agosto de 1989, en la cual se discutió la consolidación de la demanda de la señora González Suárez con la demanda de impugnación del señor Granados Navedo, y de la vista de 7 de septiembre de 1989 en que la señora González Suárez testificó y presentó prueba documental para sostener sus alegaciones. Solicitamos, además, los Anejos 1 y 2 de la resolución y orden de la cual se recurre.

El Presidente de la C.E.E., el Comisionado Electoral del Partido Nuevo Progresista y los Sres. Héctor Luis Acevedo y Eudaldo Báez Galib han comparecido. Además, el tribunal de instancia elevó ante nos los documentos solicitados por este Tribunal. El Sr. José Granados Navedo no compareció.

Examinados cuidadosamente los distintos escritos, modificamos y confirmamos la resolución y orden dictada por el foro de instancia.

I

El pasado 29 de septiembre de 1989 este Tribunal, en el caso de *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593 (1989), confirmó una resolución del tribunal de instancia que ordenó la acumulación como partes de un grupo de electores de San Juan, cuyos votos no fueron adjudicados por la C.E.E. Ello se hizo para evitar la proliferación de pleitos de

---

ciones. Como en toda consolidación, la prueba de los pleitos es prueba común para probar alegaciones.

electores excluidos, para imprimirle finalidad a unos litigios sumamente complejos y para lograr una determinación correcta que refleje fiel y finalmente la intención y votación de todo el electorado del Municipio de San Juan.

Allí expresamente dijimos que en vista de que las acciones de los electores acumulados son más afines con la demanda de la Sra. Francisca Luzgarda González Suárez, cuyo pleito había sido previamente consolidado con el pleito de impugnación instado por el Sr. José Granados Navedo —por tratar de hechos y derechos similares— la acumulación fuera efectuada en el pleito de dicha demandante y que se dispusiera de una notificación efectiva por parte de la C.E.E. a todos los electores acumulados. Determinamos, además, que esta última sufragara los costos de dicha notificación, y reiteramos que lo anterior no tenía carácter preclusivo para que el Sr. José Granados Navedo o el Sr. Héctor Luis Acevedo utilizaran las partes así acumuladas como testigos.

La resolución y orden del tribunal de instancia, dictada el 30 de octubre de 1989, de la cual se recurre ante nos, al ordenar a la señora González Suárez que enmiende su demanda con el único propósito de acumular como partes a las personas identificadas en los Anejos 1 y 2 de dicha resolución y orden, es cónsona con e implanta lo dispuesto por este Tribunal.

De las comparecencias de las partes y de los documentos ante nos surgen nuevos desarrollos procesales en el caso que ameritan tomemos medidas adicionales para salvaguardar los derechos electorales y constitucionales de los electores cuyos votos no fueron adjudicados en las elecciones celebradas en el Municipio de San Juan. Lo hacemos, además, en aras de aligerar los procedimientos en el foro de instancia.

La demandante, Sra. Francisca Luzgarda González Suárez, debe enmendar su demanda en el caso KPE 89-0274 para cumplir con la formalidad de acumular como partes a las personas identificadas en los Anejos 1 y 2 de la resolución

y orden recurrida, cumpliendo así con el mandato de este Tribunal. Esta enmienda, ordenada por este Tribunal a los fines de que puedan determinarse los derechos que asisten a dichos electores, incluirá las alegaciones pertinentes, a saber: que son electores cualificados; que votaron en las pasadas elecciones del Municipio de San Juan; que su voto no fue adjudicado en contravención a la ley y a nuestra Constitución; que ello puede afectar el resultado de las elecciones de dicho municipio; que se cuente su voto, y que se dicte el remedio que en derecho corresponda. Todo ello sin perjuicio de que las personas acumuladas que comparezcan hagan las alegaciones adicionales que estimen convenientes.

De la demandante, señora González Suárez, no dar cumplimiento a dicha formalidad dentro de cinco (5) días naturales, contados a partir de la notificación de esta Sentencia, el tribunal de instancia emitirá una resolución y orden mediante la cual acumule formalmente a los electores incluidos en los Anejos 1 y 2 e incorpore las alegaciones antes mencionadas. Advertirá, además, a dichas personas sobre sus derechos y que, de no comparecer, la sentencia que en su día se dicte a base de la prueba presentada será vinculante para ellos. Tal resolución y orden debe ser unida a los emplazamientos y edictos, con cualquier otro pronunciamiento que en derecho proceda.

Las partes deberán ser emplazadas en conformidad con las normas pautadas en nuestra opinión del pasado 29 de septiembre de 1989 y con la resolución y orden del tribunal de instancia, de la cual se recurre ante nos, para que puedan comparecer y presentar prueba para sostener sus alegaciones. En relación con todas las personas así acumuladas que no comparezcan, el tribunal, tomando en consideración

la prueba aportada por todas las partes en los pleitos consolidados, resolverá lo que corresponda en derecho.[2]

Una vez más reiteramos que lo anterior lo hacemos para salvaguardar el derecho al voto que puedan tener los electores cuyos votos no fueron adjudicados; para que estas personas tengan la oportunidad de ser oídas por el foro de instancia; para lograr una determinación correcta del resultado de las elecciones del Municipio de San Juan, y para darle finalidad vinculante a controversias afines y similares. Estos propósitos están revestidos del más alto interés público.

Por los fundamentos expuestos, se expide el auto, se modifica la resolución y orden de la cual se recurre a los efectos antes consignados y, así modificada, se confirma la misma y se ordena la continuación de los procedimientos compatibles con lo aquí expuesto.

Todos los Jueces se reservan el derecho a expresar su criterio por escrito, posteriormente, conforme lo dispone el reglamento de este Tribunal.

*Notifíquese por la vía telefónica y por correo, y remítase el mandato inmediatamente.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió opinión disidente preliminar. El Juez Asociado Señor Rebollo López al disentir expresa: "la Sentencia que hoy emite una mayoría de los integrantes del Tribunal —aparte del hecho de que constituye un absurdo desde el punto de vista jurídico-procesal— es el resultado directo de la errónea posición que asumiera esa misma mayoría el pasado 29 de septiembre de 1989; posición equivocada que prevaleció no obstante los señalamientos, vehementes y jurídicamente co-

---

(2) Las partes acumuladas como demandantes involuntarios son demandantes; por lo tanto, su incomparecencia no produciría la rebeldía según esta figura ha sido configurada en las Reglas de Procedimiento Civil y en la jurisprudencia.

rrectos, de los tres Jueces que disentimos en dicha ocasión. Realmente resulta fútil expresarnos *in extenso* nuevamente; ya hemos hecho todos los esfuerzos y señalamientos jurídicos pertinentes con el propósito de que se haga verdadera justicia en el presente caso, sin que los mismos hayan tenido resultado positivo alguno. Baste con señalar que, cumplido un año de haberse celebrado las Elecciones Generales de 1988, todavía no se sabe en definitiva quién es el Alcalde de la Ciudad Capital de Puerto Rico." El Juez Asociado Señor Ortiz disiente.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

—O—

Opinión disidente preliminar del Juez Asociado Señor Negrón García.

En todo su dramatismo jurídico, por primera vez en la historia, èl Tribunal Supremo de Puerto Rico abandona su función de órgano adjudicador imparcial, por conducto de cuatro (4) Jueces, asume el papel que le corresponde propiamente a un demandante y procede, como medio coactivo, a redactar y a suscribir una demanda y sus alegaciones en contra de la voluntad de una legítima parte. Y todo a nombre de salvaguardar el derecho de los electores, la rapidez y el interés público. Semejante atropello es inconcebible.

I

Couture, en uno de sus mandamientos, previene así a la profesión jurídica: "Ten paciencia, el tiempo se venga de las cosas que se hacen sin su colaboración."[1] Ese consejo fue

---

[1] E.J. Couture, *Los Mandamientos del Abogado*, 9na ed., Buenos Aires, Ed. Depalma, 1986, pág. 12.

desoído por la mayoría de este Tribunal el pasado 29 de septiembre de 1989 y hoy. En su *anterior* opinión disidente, el Juez Asociado Señor Ortiz señaló que esa opinión mayoritaria "ha[bía] dado final a la legítima expectativa de los candidatos Granados Navedo y Acevedo Pérez, y a sus partidarios, de que se decida pronta y efectivamente la controversia sobre el resultado legal, verídico y justo de las pasadas elecciones para Alcalde de nuestra Ciudad Capital". *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593, 704 (1989), opinión disidente del Juez Asociado Señor Ortiz.

Expuso que habían desnaturalizado y complicado el proceso con un *"injerto de figuras procesales ajenas al procedimiento especial de impugnación"*. (Énfasis suplido.) *Granados v. Rodríguez Estrada II*, supra, pág. 704. Cuestionó la adopción de procedimientos *"especialísimos para emplazar y notificar a partes con interés"* —(énfasis suplido) íd., pág. 705— y la eliminación o acortamiento de los términos para comparecer y acogerse al procedimiento de descubrimiento de prueba. Con profética visión destacó la *incertidumbre* creada en cuanto a si los electores acumulados eran *"partes demandantes, demandadas, terceros demandados o un híbrido, lo que afectará la determinación en cuanto al orden de presentación y al peso de la prueba. ¿Quién establece y quién niega, por ejemplo, el derecho al voto? ¿Los electores acumulados como partes? ¿Los candidatos? ¿Los Comisionados Electorales? ¿La Comisión Estatal de Elecciones? Hemos cambiado drásticamente la posición procesal de la Comisión Estatal de Elecciones y de su Presidente"*. (Énfasis suplido.) Íd., pág. 705. Enfatizó, además, la "imprecisión sobre el *derecho constitucional* de los electores acumulados a una efectiva *asistencia de abogado*, sobre quién sufragará las costas y honorarios de abogado de esos electores en caso de prevalecer y, peor aún, sobre cuál es su responsabilidad para el pago de costas y de honorarios bajo la Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en el caso

contrario de que no prevalezcan en su reclamo de que la Comisión Estatal de Elecciones anuló su derecho al sufragio". (Énfasis suplido y escolio omitido.) Íd., págs. 705–706. También, caracterizó la decisión como "un *monstruo* procesal incapaz de ser regulado [sin] directrices específicas . . .". (Énfasis suplido.) Íd., pág. 706. Concluyó que la acumulación de los electores como partes "violenta[ba] las disposiciones substantivas y procesales de la ley especial" y abría una "*caja de Pandora*". (Énfasis suplido.) Íd., pág. 707.

En igual sentido, en su disenso el Juez Asociado Señor Rebollo López advirtió sobre "*las graves y serias consecuencias que tendr[ía] la decisión mayoritaria que hoy se emite sobre el procedimiento pendiente en el presente caso a nivel de instancia y sobre el derecho al sufragio de los electores que hoy se decide acumular como partes*". (Énfasis suplido.) *Granados v. Rodríguez Estrada II*, supra, pág. 703, opinión disidente del Juez Asociado Señor Rebollo López.

En nuestro disenso expusimos:

¿*Qué hace hoy la mayoría de este Tribunal por votación cerrada? Revoca* una vez más al Tribunal Superior, pero eufemísticamente caracteriza el mandato como una mera "*modificación*". Opinión mayoritaria, pág. 600. Esa "*modificación*", a su vez, fuerza una decisión de emitir un decreto en el caso *distinto* de *mandamus y daños y perjuicios*, sin darle ninguna oportunidad y sin observar el debido proceso de ley hacia las partes originales en *ese proceso* que aprisiona, en particular, *a la litigante más afectada, la demandante González Suárez*. De los escombros del dictamen del Tribunal Superior *crean instantánea y artificialmente un peculiar y extraño pleito de clase* que no cumple los trámites más elementales prescritos. Luego echan a un lado y mutilan toda la normativa y jurisprudencia —civil y electoral vigente— sobre el emplazamiento *personal* requerido para que un tribunal adquiera válidamente jurisdicción sobre una parte, citando aisladamente y atribuyendo unos efectos que no tiene a unas expresiones vertidas en *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986). Por último, improvisada, arbitraria e inconstitucional-

mente sustituyen la notificación *personal* de mil ochocientos cuarenta y cinco (1,845) electores por una sencilla notificación por *correo certificado.*

*Con respeto para todos,* ese dictamen es una "caja de Pandora" de frágil hechura judicial que no debió abrirse. Entre sus males brota bruscamente no ya una transformación procesal, sino la *desfiguración,* por el tribunal de instancia, del pleito de *impugnación* entre Granados Navedo y Acevedo Pérez en trámite desde el 19 de diciembre de 1988, y la *fea deformación en apelación,* por la mayoría de este Tribunal, de la acción de *mandamus y daños y perjuicios iniciada separada e independientemente por la electora González Suárez el 17 de febrero de 1989, sin brindar a ella* y a todas las partes involucradas la oportunidad de una comparecencia.

*Coincidentalmente, ambos decretos confunden principios y mecanismos procesales elementales, inyectan unas variantes impermisibles que trastocan el esquema legislativo especial y ordinario pautado, son contrarios a la solución lógica y ordenada visualizada en las reglas vigentes y no solucionan —sino que agudizan— las infracciones al debido proceso de ley constitucional. Sobre todo complican y atrasan la adjudicación del pleito de impugnación e, innecesariamente, proyectan un conflicto jurisdiccional con la Corte de Distrito Federal para el Distrito de Puerto Rico.* (Énfasis suplido y en el original.) *Granados v. Rodríguez Estrada II,* supra, págs. 618–620, opinión disidente.

Y más adelante indicamos:

El enredo de la opinión mayoritaria es transparente. Funde causas de acciones diferentes y confunde los efectos del mecanismo de la consolidación con el de acumulación. *En movimiento de traslación llega al extremo de mudar de lugar* a uno de los litigantes principales, al concluir que la acción de *mandamus y daños y perjuicios* de la señora González Suárez y el pleito de "impugnación por el señor Granados Navedo *tienen el mismo objetivo —cuestionar el resultado electoral para el cargo de Alcalde de San Juan . . .".* (Énfasis suplido.) Opinión mayoritaria, pág. 608. La mutación procesal culmina cuando astutamente en dicha opinión se formula la pregunta siguiente: "¿qué clase de *remedio completo* se le puede ofre-

cer al peticionario Granados Navedo . . .?" (Énfasis en el original suprimido y énfasis suplido.) Íd. En otras palabras, aun cuando la mayoría reconoce que los electores no son acumulables como partes en el *pleito de impugnación*, continúan girando descontroladamente en torno a Granados Navedo —y también, sin mencionarlo, alrededor de Acevedo Pérez— y, atraídos fatalmente por ese polo magnético o centro de gravedad, enrevesadamente y *sin fundamentos jurídicos los acumulan en la acción independiente de la señora González Suárez.* El tambaleante puente que sirve de sostén a ese gigantesco paso e inesperado tránsito sustantivo y procesal es una sencilla *consolidación.* (Énfasis en el original.) *Granados v. Rodríguez Estrada II*, supra, págs. 653–654.

De nada valieron estos y otros argumentos esgrimidos con vehemencia en apoyo de la *total revocación* de la orden de acumulación del Tribunal Superior. Artificialmente se cambiaron de sitio los protagonistas principales y se emitió una decisión violatoria del debido proceso de ley y demás derechos de la señora González Suárez y de esos numerosos electores antes marginados por la Comisión Estatal de Elecciones.

## II

Pocos días después (el *6 de octubre*), sin haber transcurrido el término para una reconsideración, este Tribunal, a solicitud del Presidente de la Comisión Estatal de Elecciones y de los demandados Báez Galib y Acevedo Pérez, festinadamente y a destiempo ordenó la remisión inmediata del mandato. *Nos opusimos a dicho proceder de la forma siguiente*:

. . . [H]emos comprometido y limitado peligrosamente nuestro sentido de responsabilidad institucional *en cuanto al ámbito temporal de nuestra jurisdicción apelativa.* Bajo el desgastado vocablo de la "importancia" del caso *ignoramos otra vez unos términos configurativos de derechos sustantivos y procesales de las partes.* El 29 de septiembre, inconstitucio-

nalmente, la mayoría descartó el trámite de emplazamiento personal para adquirir válidamente jurisdicción sobre mil ochocientos cuarenta y cinco (1,845) electores acumulados indebidamente como partes, y ahora, de un plumazo, *lo hacen en cuanto al trámite de reconsideración apelativo*.

De hecho, la resolución mayoritaria sólo podría explicarse si, *a priori*, partimos de la premisa de que *ninguna de las partes originales* en el *pleito de impugnación* o en la demanda de *mandamus y daños y perjuicios* —excepto la Comisión Estatal de Elecciones, Acevedo Pérez y Báez Galib— pedirá la reconsideración. Confesamos que carecemos de la mágica bola de cristal para así anticiparlo, desconocemos el cimiento u origen de ese conocimiento *y los fundamentos que pudieran aducir las partes perdidosas en abono de una reconsideración*. (Énfasis suplido y en el original.) *Granados v. Rodríguez Estrada III*, 124 D.P.R. 716, 718–719 (1989), opinión disidente.

Y en vista de que la señora González Suárez *nunca* había tenido ni se le había brindado la oportunidad de exponer *en foro judicial alguno* su posición respecto a la decisión posterior de añadir a su caso, por vía de acumulación, mil ochocientos cuarenta y cinco (1,845) *nuevas partes*, aconsejamos prudencialmente —ante la decisión dividida fundada en una votación *cerrada* de cuatro a tres (4–3) Jueces de este Foro— esperar que venciera el término de reconsideración o que se requiriera a las restantes partes que expusieran sus posiciones. Finiquitamos ese disenso con la observación siguiente: "*Con marcha en retroceso en el ámbito procesal no se avanza hacia la superación de nuestra democracia.*" (Énfasis suplido.) *Granados v. Rodríguez Estrada III*, supra, pág. 720.

### III

*El 11 de octubre occurrió lo que era de esperarse.* Por *primera vez* compareció a este Foro la señora González Suárez, pidió intervención y aclaración de los errores de la opinión mayoritaria de 29 de septiembre de 1989. Demostró que

la principal conclusión mayoritaria —en que se fundamentó la consolidación y acumulación— a saber, que su acción "tien[e] el mismo objetivo —cuestionar el resultado electoral para el cargo de Alcalde de San Juan—" (*Granados v. Rodríguez Estrada II*, supra, pág. 608), *no era correcta y que por estipulación así lo habían aceptado los litigantes Granados Navedo y Acevedo Pérez*. Al disentir otra vez de la negativa del Tribunal, consignamos:

> Ante esta *VERDAD*, lo procedente sería reclamar el mandato e inmediatamente corregir dicho error en la opinión mayoritaria. La resolución de hoy, sin fundamentos, niega discrecionalmente ese remedio. *La renuencia a así reconocerlo configura un patrón acumulativo de injusticia*. Se comprende al percatarnos de que su aceptación implicaría una reconsideración de la opinión mayoritaria, la cual frágilmente sólo se funda en el ejercicio de una *discreción ilimitada*. Estamos a tiempo para hacer cumplida justicia y "fijar correctamente las coordenadas que en el plano electoral y constitucional el recurso nos presenta". *Granados v. Rodríguez Estrada II*, supra, pág. 682, opinión disidente. *Contra la VERDAD no cabe invocar discreción judicial alguna*. A la postre, "[p]or su naturaleza no reglada, el ejercicio de la discreción es la prerrogativa judicial más poderosa y peligrosa. Siempre reclama una profunda reflexión íntima de conciencia". (Énfasis en el original.) Íd., pág. 684. (Énfasis suplido y en el original.) *Granados v. Rodríguez Estrada IV*, 124 D.P.R. 720, 726 (1989), voto disidente.

### IV

*No transcurrió mucho tiempo para que de la caja de Pandora brotaran los males procesales señalados* por los Jueces Asociados Señores Rebollo López, Ortiz y el que suscribe, en sus respectivos disensos. El pasado 30 de octubre el Tribunal Superior, Sala de San Juan (Hon. Carlos E. Polo, Juez), conforme el mandato mayoritario de 29 de septiembre, ordenó: (1) la acumulación como partes de mil doscientos ochenta (1,280) electores, incluyendo a los cuarenta y

dos (42) que reclamaron en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico; (2) que en el plazo de cinco (5) días naturales la *señora González Suárez enmendara su demanda* "con el único propósito de acumular[los] como partes" (Resolución y orden, pág. 2); (3) que la Comisión Estatal de Elecciones les notificara mediante edictos, apercibiéndoles que deberían comparecer dentro del término de veinte (20) días *en el caso de la señora González Suárez* "a formular sus *alegaciones* en reclamo de sus derechos electorales y de que se adjudique su voto emitido en las pasadas elecciones generales del 8 de noviembre de 1988" (énfasis suplido) íd.; (4) que, simultáneamente con esa publicación, se les notificara por correo certificado con acuse de recibo de "copia de la demanda *enmendada* [en el epígrafe], del edicto y *de la presente resolución*" (énfasis suplido) íd., y (5) que se emplazara personalmente los votantes que reclamaron en la Corte federal. Finalmente, dispuso que los que *no comparecieran renunciaban a sus derechos, les anotaría la rebeldía* y dictaría sentencia en su contra *a base de que aceptaron "la corrección de la determinación de la CEE . . .".* (Énfasis suplido.) Íd., pág. 3.

Inconforme, el 6 de noviembre la señora González Suárez presentó este *certiorari* que, en su esencia, cuestiona la procedencia de esa orden debido a que el mandato de este Foro estuvo fundado en una consolidación *inexistente*. Aduce que *desde el 7 de septiembre* se había desfilado la prueba sobre sus cualificaciones como electora y que su caso quedó sometido. Impugnó, además, la obligación que le fue impuesta de enmendar las alegaciones de su demanda.

A la luz de esos señalamientos, concedimos a todas las partes término para que comparecieran y, en auxilio de jurisdicción, paralizamos la orden. Comparecieron el Presidente de la Comisión Estatal de Elecciones, Lcdo. Marcos A. Rodríguez Estrada (codemandado en la acción de la señora González Suárez), los demandados, Lcdos. Héctor L. Ace-

vedo Pérez y Eudaldo Báez Galib (este último Comisionado Electoral del P.P.D.) y el Sr. Francisco González Rodríguez, Comisionado del P.N.P.

## V

Los escritos del Presidente de la Comisión Estatal de Elecciones y de Acevedo Pérez y Báez Galib revelan notables contradicciones en sus posiciones. Sobre todo, son la mejor prueba de la antijuridicidad de la opinión mayoritaria de 29 de septiembre y de la difícil situación en que colocaron al ilustrado foro de instancia.

Como la sentencia mayoritaria guarda silencio, expongamos brevemente esas posiciones.(2) El Presidente de la Comisión Estatal de Elecciones, luego de aludir a la orden, petición de *certiorari* y negativa de la representación legal de la señora González Suárez a suscribir "una alegación de demanda enmendada" —Comparecencia del Presidente de la Comisión Estatal de Elecciones en relación con el último escrito de la demandante Francisca Lu[z]garda González Suárez, pág. 2— según le fue requerido, expresa su interés en cumplir con el mandato mayoritario. Sin embargo, nos comunica "su preocupación po[r q]ue el procedimiento de acumulación *no adolezca de ningún defecto que pueda hacerlo susceptible de anulación en el futuro*". (Énfasis suplido.) Íd. Debido a que costará *en exceso de $82,200*, considera "necesario la vigilancia estricta de manera que se cumpla con todos los incidentes del procedimiento". Íd. Afirma que "no tiene mayor interés *en cuál de las partes* deberá redactar la alegación para acumular a los 1,280 electores . . .". Íd. Anticipa que la inmensa mayoría "no comparecer[á,]

---

(2) El escrito del Comisionado del P.N.P., Sr. Francisco González Rodríguez, nada aporta. Se circunscribe lacónicamente a exponer que deben contarse todos los votos.

por lo que su derecho eventualmente será resuelto a través de una sentencia en rebeldía". Íd.

Bajo esa premisa, el Presidente Rodríguez Estrada argumenta correctamente que la "rebeldía, *en este, o en cualquier otro caso, exige que se le hayan formulado al demandado alegaciones conteniendo hechos bien aseverados* que al aceptarse mediante su incomparecencia justifiquen que se dicte una sentencia en rebeldía en su contra. Regla 45.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 45.1. *Continental Insurance Company vs. Isleta Marina*, 106 D.P.R. 809, 815 (197[8])". (Énfasis suplido.) Íd., pág. 2. Nos advierte que como la "única consecuencia jurídica del trámite de un caso en rebeldía *es que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda*, es *necesario*, por tanto, que *la formulación de alegaciones completas con respecto a estos electores, pues de lo contrario no se podría sostener una sentencia en rebeldía en contra de ellos*". (Énfasis suplido.) Íd., págs. 2–3. Finalmente, con atinada precisión, concluye que la Comisión Estatal de Elecciones *"no puede ser la parte que formule esta alegación toda vez que fue ella misma la que tomó la decisión final, adjudicando que estos electores*, a ser acumulados ahora como parte, *no tenían derecho a votar para el cargo de Alcalde de San Juan*. La Comisión Estatal de Elecciones, al igual que cualquier organismo administrativo, *no podría comparecer a un tribunal de justicia a solicitarle que validara la decisión que ella misma ha tomado*". (Énfasis suplido.) Íd., pág. 3.

Por su parte, Acevedo Pérez y Báez Galib nos solicitan la desestimación sumaria del recurso con miras a expeditar la solución del caso en instancia. A esos efectos *afirman que en el pleito de Granados Navedo y Acevedo Pérez la prueba se desfiló y finalizó en su totalidad*, y que sólo resta presentar unos memoriales en o antes del 17 de este mes. Para apoyar la desestimación sumaria de la apelación de la señora Gonzá-

lez Suárez, estiman inmeritorio y no argumentan a fondo su señalamiento de que la acumulación decretada fue errónea por estar fundada en una consolidación original limitada. En cuanto al segundo señalamiento —que no podía obligársele a enmendar— tampoco argumentan en contra. Más bien, sostienen y nos piden que resolvamos que corresponde a la *Comisión Estatal de Elecciones* enmendar la demanda de la señora González Suárez y que, de no ser posible, autoricemos a Acevedo Pérez a redactar la alegación para acumular los mil doscientos ochenta (1,280) electores.

En resumen, de un lado el Presidente de la Comisión Estatal de Elecciones acepta que jurídicamente sería un contrasentido que se le ordenara enmendar la demanda de la señora González Suárez y, del otro, Acevedo Pérez y Báez Galib evaden el planteamiento de ella, insisten en que debe ser la Comisión Estatal de Elecciones y, finalmente, nos proponen la alternativa que sea Acevedo Pérez quien formule la alegación. *El resultado de estas posturas irreconciliables entre sí revela la encerrona jurídica en que se encuentra la mayoría del Tribunal.*

## VI

Tiene toda la razón la señora González Suárez. Como *VERDAD* procesal que ninguna de las partes ha podido refutar, ha quedado demostrado que la frágil premisa, en la cual se fundamentó la mayoría del Tribunal para ordenar la acumulación de los electores y consolidar sus causas de acción al pleito de ella, *no esxistía al momento de así decretarse* el 29 de septiembre de 1989. *Así lo acreditan fehacientemente los autos y el extenso esc. 1 de la sentencia mayoritaria.* Confirman que la consolidación *original* del foro de instancia de 15 de agosto no fue total, sino *cualificada.* Fue de carácter *parcial,* con el único y *limitado fin* de que ella desfilara su prueba en torno a su *status* de electora en el *momento* en que prestara testimonio como testigo de Granados Navedo.

T.E. Superior de 7 de agosto de 1989, pág. 86; Transcripción de evidencia, págs. 4–7. *Ese evento ya aconteció.* La prueba se presentó el *7 de septiembre* ante el Magistrado Carlos E. Polo. Transcripción parcial de evidencia, págs. 1–24.

Esta cronología refleja indubitadamente que desde el 7 de septiembre el propósito de la consolidación —desfilar la señora González Suárez la prueba común de hechos *simultáneamente* como *parte y testigo*— quedó cumplido. Su causa de acción individual quedó *sometida* para dictamen por el tribunal de instancia sobre la otra cuestión común de *derecho*, a saber, la conclusión jurídica de si era o no electora cualificada y si debería adjudicarse su voto. Lo *único* que quedó pendiente en *su* caso —sujeto a ese resultado— fue la reclamación de daños y perjuicios, la cual acorde con la consolidación limitada se vería "posteriormente y por separado para no interrumpir las labores en el caso de impugnación". Transcripción de evidencia, pág. 2.

Ante esta innegable realidad, ¿cómo la mayoría puede sostener todavía la existencia de una consolidación *masiva*, que decretaron *mucho después* (el 29 de septiembre) de haberse sometido el caso de la señora González Suárez?

*Sólo por forzada ficción, ajena a esta VERDAD procesal y al derecho vigente, puede concluirse lo contrario.* Y únicamente por razón de una venda judicial irremovible puede insistirse en la juridicidad de acumular como partes a los electores marginados por la Comisión Estatal de Elecciones al pleito de la señora González Suárez.

Una vez sometido el caso de la señora González Suárez, el 7 de septiembre, se evidencia con meridiana claridad que el mismo podía adjudicarse satisfactoriamente a partir de esa fecha —incluso *hoy mismo*— sin que fuera ni sea menester la acumulación de los numerosos electores. La presencia de esos electores no es necesaria ni indispensable para "adjudicarse esa controversia". Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Tampoco lo es para "conceder un reme-

dio completo a las personas que ya [son] partes en el pleito" (Regla 16.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III), esto es, ella, la Comisión Estatal de Elecciones y otros. No podemos ignorar que la frase "'Interés común' *no es cualquier interés en el pleito*. Tiene que ser un interés de tal orden que *impida la confección* de un decreto sin afectarlo. 'Remedio completo' también tiene un *significado especial*. El remedio completo a que se refiere la Regla 16 alude al remedio entre las personas y entidades *que ya son partes en el pleito y no al obtenible entre una parte y el ausente"*. *Hernández Agosto v. López Nieves*, 114 D.P.R. 601, 607 (1983).

La mayoría del Tribunal —como tampoco ninguna de las otras partes— no ha adelantado *una sola razón justificativa* para que al 7 de septiembre, el 29 del mismo mes o al día de hoy, fuera y sea necesaria la acumulación de esos electores para que pueda el Tribunal Superior resolver si la señora González Suárez es o no una electora cualificada. *Ese silencio es elocuente*. Repetimos, ya la prueba de ella desfiló y su caso quedó sometido. ¿Qué prueba adicional sobre las circunstancias personales y cualificaciones como electora pueden aportar a su causa de acción los electores marginados? *Ninguna*.

En conclusión, le asiste la razón a la señora González Suárez. Es erróneo y absurdo inyectarle a la orden de consolidación *limitada* —que surtió sus efectos evidenciarios el 7 de septiembre— la acumulación de los electores marginados por la Comisión Estatal de Elecciones.

## VII

¿Qué hace hoy la mayoría de este Tribunal? *Primero*, resuelve que la orden del tribunal de instancia "es cónsona con e implanta" lo dispuesto el 29 de septiembre. Sentencia, pág. 752. *Segundo*, toma medidas adicionales para enfrentar "nuevos desarrollos procesales" (íd.) —diz que apara alige-

rar los procedimientos— a saber: (1) ordena a la señora González Suárez a enmendar su demanda "para cumplir con la *formalidad* de acumular" (énfasis suplido) (íd.) a los restantes electores; (2) redacta y formula las alegaciones que contendrá la demanda enmendada;[3] (3) le concede a ella cinco (5) días naturales para enmendarla, y (4) de no hacerlo la señora González Suárez, la realizará el tribunal de instancia. *Tercero*, determina que la sentencia que en su día se dicte "será vinculante" (íd., pág. 753) para los que no comparezcan.

Independientemente de lo erróneo de la consolidación y acumulación original sostenida antes por la mayoría, *este sorpresivo nuevo curso decisorio* nos obliga a dirigirnos a las comparecencias del Presidente de la Comisión Estatal de Elecciones y de Acevedo Pérez y a la de Granados Navedo.

Según expuesto, la Comisión Estatal de Elecciones acepta que *no* puede ser quien enmiende las alegaciones de la demanda. Acevedo Pérez y Báez Galib insisten en lo contrario. Sin embargo, por vía de escolio, evaden la controversia de si realmente puede o no obligarse a la señora González Suárez a acumular como partes a esos electores contra su voluntad. Curiosa y reveladoramente remiten al "futuro" esa controversia. Solicitud para que se disponga sumariamente de la petición de *certiorari* y comparecencia en cumplimiento de orden, pág. 7 esc. 6. Así pospuesta, se limitan a argumentar que la opinión mayoritaria resolvió "con claridad" que ello correspondía a la Comisión Estatal de Elec-

---

(3) Según la sentencia mayoritaria, esta "enmienda . . .*incluirá* las alegaciones pertinentes, a saber: que son electores cualificados; que votaron en las pasadas elecciones del Municipio de San Juan; que su voto no fue adjudicado en contravención a la ley y a nuestra Constitución; que ello puede afectar el resultado de las elecciones de dicho municipio; que se cuente su voto, y que se dicte el remedio que en derecho corresponda. Todo ello sin perjuicio de que las personas acumuladas que comparezcan hagan las alegaciones adicionales que estimen convenientes." (Énfasis suplido.) Sentencia, pág. 753.

ciones, y que para dar certeza final a la controversia entre Granados Navedo y Acevedo Pérez *"es innecesario imponerle la obligación a la demandante González Suárez de la misma forma en que el Tribunal decidió relevar de una obligación similar al demandante Granados Navedo"*. (Énfasis suplido.) Íd., pág. 8. Por último, solicitan que autoricemos a Acevedo Pérez a realizar las enmiendas.

Ante estas comparecencias, *verdaderamente es increíble que hoy la mayoría redacte unas alegaciones* y resuelva obligar a la señora González Suárez a enmendar su demanda para "cumplir con la formalidad de acumular como partes" (sentencia, pág. 752) a mil doscientos ochenta (1,280) electores marginados por la Comisión Estatal de Elecciones. *Hasta hoy creíamos que esa gestión correspondía a los litigantes y a su abogado.* ¿Qué conocimiento individual de las cualificaciones de esos electores tiene la señora González Suárez? ¿Qué fundamento en derecho para imputárselo? ¿Bajo qué norma jurídica se le está confiriendo esa representación? ¿Cómo se pretende que el licenciado Quiñones Vizcarrondo pueda firmar esas alegaciones y, conforme los efectos de la Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dé fe y certifique "que de acuerdo con su mejor conocimiento, información y creencia está bien fundado"? *Y, finalmente, ¿qué autoridad tiene la mayoría para asumir el papel de parte —redactar unas alegaciones— y echar a un lado su función de órgano imparcial?* ¿Qué sucederá cuando mañana tenga que decidir cualesquiera planteamientos de la Comisión Estatal de Elecciones sobre su suficiencia?

Esa actuación ha sido motivada en vista de que la sola mención e inclusión en el epígrafe de la demanda —como *partes demandantes*— de los nombres de "las personas identificadas en los Anejos 1 y 2" (sentencia, pág. 752) sería insuficiente en derecho para iniciar y canalizar válidamente una enmienda en reclamo de esos electores.

"La naturaleza adversaria de un pleito no puede supeditarse al escueto formulismo de las etiquetas empleadas. El epígrafe de un caso no determina su naturaleza." *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 257–258 (1978). Por ende, aparte de ese nuevo epígrafe así enmendado, en la demanda sólo subsistirían las restantes alegaciones particularizadas de la señora González Suárez. Estas alegaciones, en síntesis, exponen que es residente del Municipio de San Juan y electora legalmente inscrita con tarjeta electoral; que participó en las últimas siete (7) elecciones; que sin fundamento ni recusación válida fue obligada "a votar con voto abierto"; que hasta el presente su voto no se ha adjudicado, y que ello constituía una violación al deber ministerial de la Comisión Estatal de Elecciones y de los otros demandados, y una infracción a sus derechos constitucionales. Además, exponen su solicitud de $1,500,000 en daños y perjuicios.

Obviamente, esas alegaciones específicas —por su carácter individual y personalísimo— no pueden, por *fiat* judicial, hacerse extensivas a las circunstancias particulares de más de mil electores acumulados. Siendo así, sin otras enmiendas sustanciales efectuadas por persona con capacidad legal para ello, es evidente que la simple inclusión de los nombres en el epígrafe de la demanda de la señora González Suárez no aduciría una causa de acción válida en favor de esos numerosos electores. Estaríamos ante una demanda enmendada, *a priori* desestimable de su faz.

Para salvar este insuperable escollo, el Tribunal redacta las enmiendas. *Realmente es imposible conciliar la sentencia mayoritaria con nuestro ordenamiento procesal vigente.* Antes y ahora es improcedente la acumulación de esos electores como partes demandantes. No existía entonces, como tampoco actualmente, un mínimo de contenido sustancial de *afinidad* con la señora González Suárez.

Sin esas alegaciones, la sola inclusión en el epígrafe de los electores de los Anejos 1 y 2 era un acto inocuo. *Por arte de*

*magia jurídica, la mayoría se ve forzada a redactar las ale-gaciones, pues sabe que en nuestro derecho es inconcebible incluir y acumular a una persona como demandante sin que en el cuerpo de la demanda existan o se introduzcan unas alegaciones fácticas mínimas y básicas en qué apoyar una causa de acción válida.* Toda acumulación de un indivi-duo, como parte demandante, tiene que tener algún sentido. *El dictamen mayoritario sólo lo tiene como un acto de espe-jismo judicial.*

Estos principios elementales aclaran el prisma decisorio. El ilustrado tribunal de instancia, por el revoltijo de la mayo-ría, se vió obligado a trastocar toda la mecánica sustantiva y procesal atinente. De un lado, pretendió incluir a los elec-tores con una simple mención en el epígrafe —sin alega-ciones de sustancia— y del otro, de no comparecer éstos, concluyó que les anotaría la rebeldía, estimaría renunciados sus derechos y daba por sentado que aceptaban la corrección de la determinación de la Comisión Estatal de Elecciones. Los apercibimientos en esa orden no son alegaciones.

Nos preguntamos: ¿Dónde se autoriza semejante trámite en nuestro ordenamiento? ¿Desde cuándo es posible anotar la rebeldía a unos demandantes? ¿Cuáles son las "materias bien alegadas", conforme *Continental Ins. Co. v. Isleta Ma-rina,* 106 D.P.R. 809, 815–816 (1978), que validan ese trá-mite?

*De estas interrogantes aflora la precariedad jurídica de la opinión mayoritaria del Tribunal y la verdadera mons-truosidad procesal creada.* A la confusión anterior, suscitada por la errónea definición de "causa de acción" y la aplicación indebida de otras instituciones procesales, ahora redactan unas alegaciones y *autorizan* un supuesto trámite concebido originalmente para dar oportunidad a los electores margi-nados, *como demandantes involuntarios,* que a corto plazo, en la práctica, *los convierte en demandados. Aunque la sen-tencia asevera que modifica la orden de instancia y elimina*

*el apercibimiento de rebeldía —como consecuencia del proceso circular vicioso creado— logra ese mismo resultado, esto es, a los electores que no comparezcan se les dictará sentencia en su contra mediante la aplicación automática de una presunción de corrección administrativa de la Comisión Estatal de Elecciones.* El saldo neto es dispensar a la Comisión Estatal de Elecciones, como parte demandada, de presentar prueba en apoyo de su negativa a adjudicar los votos de esos electores sin que existan alegaciones que real, verdadera y legítimamente correspondan a hechos peculiares de esos electores.

La rebeldía contra los electores visualizada por el ilustrado foro de instancia en su orden —y refrendada implícitamente por la mayoría— *es desconocida en nuestro derecho. Aunque se dé la sensación de que se ha eliminado la rebeldía, subsisten sus efectos.* Por su naturaleza y definición, la rebeldía es conducta propia imputable sólo a un demandado. Por lo tanto, es inconcebible atribuirles rebeldía a esos electores como partes demandantes y, menos, sin alegaciones. La Regla 45.1 de Procedimiento Civil, en lo pertinente, tajantemente dispone:

Cuando *una parte contra la cual* se solicite una sentencia que concede un *remedio afirmativo* haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante declaración jurada o de otro modo, el secretario anotará su rebeldía. (Énfasis suplido.) 32 L.P.R.A. Ap. III.

José Guerra San Martín, al glosar sobre esta imposibilidad procesal, afirma que "en efecto, esto será lo ordinario, pues parece que si la rebeldía se caracteriza por la no presencia en el pleito de una parte, *nunca podrá darse la situación de rebeldía en el demandante,* pues sin actor no existe posibilidad de juicio, según el conocido aforismo 'nemo judex sine actore'". (Énfasis suplido.) J. Guerra San Martín, *Lec-*

*ciones de Derecho Procesal Civil*, Bilbao, Publicaciones de la Universidad de Deusto, 1978, T. II, Vol. 1, pág. 45.

Para que pueda dictarse válidamente sentencia en rebeldía, una vez haya transcurrido el término concedido sin que el demandado comparezca al proceso, nuestro ordenamiento exige los requisitos siguientes: la pendencia de un proceso iniciado previamente con la presentación de una demanda (Regla 2 de Procedimiento Civil, 32 L.P.R.A. Ap. III); *que existan unas alegaciones correctas por la parte demandante* de unos hechos (y solicitud de remedios), *susceptibles de alegaciones respondientes* (Reglas 6.1, 6.5 y 10.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III); un llamamiento previo y válido al demandado, mediante emplazamiento personal o por edictos si se cumplen determinados requisitos, para que éste refute las alegaciones como adversario; su incomparecencia, y la anotación de rebeldía. La consecuencia jurídica de este trámite es que se estimen aceptadas todas y cada una de las materias bien alegadas en la demanda. *Continental Ins. Co. v. Isleta Marina*, supra; *Rodríguez v. Tribunal Superior*, 102 D.P.R. 290, 294 (1974).

Esta normativa doctrinal pone de manifiesto que el apercibimiento del tribunal de instancia, a los fines de que la incomparecencia de los electores tendría el efecto de declarárseles en rebeldía, no sólo es equivocado, sino que subvierte radicalmente todo nuestro ordenamiento procesal relativo a esta materia. *Lo mismo ocurre con la modificación cosmética introducida por la mayoría.* También demuestra lo erróneo de la pretensión de Acevedo Pérez y Báez Galib de que, según la opinión mayoritaria de 29 de septiembre, corresponde a la Comisión Estatal de Elecciones enmendar las alegaciones. Carecería de toda lógica (por no decir sentido común) decidir que dicho organismo, como ente que no les adjudicó sus votos ni les notificó a los electores esa determinación, asumiera simultáneamente los conflictivos papeles de demandante y demandado.

*La discreción judicial no puede utilizarse de mampara
para continuar virando al revés nuestro ordenamiento pro-
cesal.* Persistir la mayoría en la consolidación y acumular
como demandantes al pleito de la señora González Suárez los
mil doscientos ochenta (1,280) electores con el fin de "darle
finalidad vinculante a controversias" de electores excluidos
es convertir la acción de impugnación en una acción de re-
clamo de electores bajo el espúreo pretexto de un común de-
nominador.

Si algún significado tiene la vacilante comparecencia de
Acevedo Pérez y Báez Galib —conflictiva con la de la Comi-
sión Estatal de Elecciones— es que demuestra que los mil
doscientos ochenta (1,280) electores no son las partes indis-
pensables o necesarias en el pleito de la señora González
Suárez, susceptibles de acumularse bajo las Reglas 16.1 ó
16.2 de Procedimiento Civil, *supra.* La situación de la señora
González Suárez no es tal que, de no ser acumulados esos
electores, el tribunal no podría adjudicar el pleito por falta
de parte *indispensable* o "estaría obligado a conceder un re-
medio parcial o 'hueco' en lugar de uno completo a las partes
ante el tribunal". (Traducción nuestra.) Advisory Commit-
tee's Note, *Proposed Rules of Civil Procedure*, 39 F.R.D. 69,
91 (1966). Ciertamente esos electores pueden instar acciones
separadas, distintas e independientes a la presentada por la
peticionaria González Suárez, no estando las resueltas de
unos sujetas a las de otros. Después de todo, la independen-
cia de las causas de acción ya fue reconocida por la mayoría
el 29 de septiembre de 1989.

## VIII

La alternativa propuesta por Acevedo Pérez para que se
le permita enmendar la demanda de la señora González Suá-
rez, aparte de su frivolidad, es también indicativa de la ma-
deja procesal creada por la mayoría de este Tribunal.

El esquema legislativo *especial* persigue que el pleito [de
impugnación] se resuelva *prontamente.* Tiene perfiles pro-

pios. *Los electores no son partes indispensables ni necesarias.* Estos tienen el derecho a instar una *acción legal separada e independiente* —individual o de clase— para reclamar sus votos particulares. *Esa causa de acción va dirigida contra la Comisión Estatal, quien por ley es la parte demandada, por ser el organismo que adjudica o no tales votos.* El tribunal ante quien se ventile la acción de impugnación —paralelamente con una o varias acciones *preexistentes* de electores— puede *consolidar* las vistas en aras de la economía procesal *si con ello no atrasa una o la otra. Pero, ciertamente, la acción de impugnación no puede convertirse en una acción de reclamo de los electores ni ser demorada con una consolidación*; tampoco atribuirle a esa consolidación unos efectos ajenos a su naturaleza. Incluir a los electores, bajo la Regla 16.2 de Procedimiento Civil, *supra*, y exigir a cualesquiera de los *contendientes principales* el emplazamiento de esos o cualesquiera otros equivale erróneamente a convertirlos de forma indirecta en *partes indispensables* bajo la Regla 16.1 de Procedimiento Civil, *supra. Incidió, pues, el foro de instancia.* (Énfasis suplido y en el original.) *Granados v. Rodríguez Estrada II*, supra, pág. 652, opinión disidente.

Acceder a la solicitud de Acevedo Pérez sería resucitar y hacer, mediante una circunvalación, lo que antes se rechazó: acumular "*como partes a esos electores en el pleito de impugnación*. Bajo los parámetros que informa la Regla 16 de Procedimiento Civil, *supra*, sobre acumulación, el transplante es impermisible". (Énfasis en el original.) *Granados v. Rodríguez Estrada II*, supra, pág. 653, opinión disidente.

## IX

Compeler, ilegal e injustamente, a la señora González Suárez y a su abogado Quiñones Vizcarrondo a que suscriban las enmiendas a la demanda redactada por la mayoría de los Jueces es ponerlos en la encrucijada de acatar ese dictamen en contra de su voluntad o no aceptarlo. Este último proceder sólo los expondría a que el tribunal de instancia, como sanción, les desestimara la acción. También podrían optar

por desistir voluntariamente. Cualesquiera de estas dos (2) alternativas prueban la precariedad de la decisión mayoritaria. *Privarían al Tribunal del único sostén en que se apuntalan las alegaciones redactadas y la pretendida acumulación de los más de mil doscientos ochenta (1,280) electores.*

Finalmente, por el elemento coactivo presente en el mandato de este Tribunal, la señora González Suárez también podría solicitar de inmediato o posteriormente, en su condición de reclamante que acudió previamente a la Corte de Distrito federal, la intervención de ese foro en protección de sus derechos. Tampoco inhibiría igual pedido por los cientos de electores afectados por la infracción que genera la consolidación, acumulación, notificación, redacción de alegaciones y enmienda decretada hoy inconstitucionalmente.

## X

Sobre el extremo de la citación, no debe existir dudas de que el correo certificado y la publicación de los edictos, en las presentes circunstancias, son mecanismos inválidos que no están autorizados por nuestro ordenamiento jurídico. *De hecho, vician a priori todo el montaje de la acumulación.* Cualquier elector que no sea citado *personalmente* puede negarse a comparecer y atacar la validez de la sentencia. A fin de cuentas, la jurisdicción *in personam* es un presupuesto para la invocación de la doctrina de cosa juzgada o impedimento colateral por sentencia. *A la postre, la cuestión va a las entrañas del debido proceso de ley y es asunto justiciable bajo nuestra Constitución y la federal.*

*La opinión mayoritaria ha abierto una brecha imposible de ser cerrada.* Anticipamos que los costos ascendentes a más de $116,760 en que incurrirá la Comisión Estatal de Elecciones en el trámite de citación por correo y mediante edictos, *lamentablemente constituirá un dispendio injustificado e improductivo de fondos públicos.*

A fin de cuentas, el procedimiento pautado por la mayoría es para seguirse ante el foro judicial, no en el organismo administrativo. En juego está el derecho al voto, valor individual y comunitario constitucional inestimable en nuestro sistema democrático. *Es inaudito que hayan relajado de este modo las normas aplicables en cuanto a la citación personal de esos electores.* Toda nuestra casuística propugna:

> *Dar a la parte demandada la oportunidad de ser oída es principio esencial de nuestro procedimiento con honda raíz constitucional. Jacob v. Roberts*, 223 U.S. 261 (1912). Para que pueda hacer valer esa oportunidad *es preciso notificarla personalmente que se le ha demandado.* "Una sentencia dictada sin tal notificación y oportunidad *carece de todos los atributos de una determinación judicial;* es una usurpación y opresión judicial y *nunca puede ser sostenida* donde la justicia se administra justicieramente". (Énfasis suplido.) *Mundo v. Fúster*, 87 D.P.R. 363, 365 (1963).

En la *panorámica electoral* prevalece idéntico enfoque riguroso y de estricta observancia. *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199, 232 (1981).

Como expusimos antes en nuestro disenso:

> *Estos requisitos jurisdiccionales son de estirpe constitucional e inexorables para la aplicación de la doctrina de cosa juzgada e impedimento colateral por sentencia.* Nuestras decisiones exigen que: (1) la notificación al elector sea *personal* (esta notificación personal se satisface cuando éste expresamente ha rehusado recibir la notificación e impedido la entrega física de la citación) y (2) únicamente se puede acudir al método supletorio de edictos y a la remisión por correo certificado si se han realizado previamente y se han consignado así en declaración jurada —la Regla 4.5 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) *eliminó* el requisito de diligenciamiento negativo— las gestiones para localizar al elector en Puerto Rico.

La importancia y recta observancia de este trámite no puede subestimarse. La Comisión Estatal posee en sus récord las direcciones de todos esos electores. Esos archivos, las de-

claraciones juradas suscritas al votar y las fotografías en las tarjetas de identificación electoral son los documentos para constatar las direcciones e identificar apropiadamente a esos electores y así, *como primer paso*, intentar *emplazarlos personalmente. [Un (1) año] después de las elecciones no son válidas unas notificaciones por correo certificado y unos simples avisos caracterizados como edictos.*

Pero hay más. El trámite pautado de manera deficiente por la mayoría es *significativamente menor* que el fijado por la propia Comisión Estatal en su *Reglamento de Recusaciones y Exclusiones*, aprobado el 11 de diciembre de 1987. Su Sec. 2.5 establece la *necesidad* de notificación *personal* de aquellos electores —sean pocos, cientos o miles— a quienes se les pretenda recusar. Únicamente autoriza la citación mediante edictos después de haberse gestionado infructuosamente la notificación personal y así se acredite mediante diligenciamiento negativo.

La única ocasión en que nuestro ordenamiento autoriza la notificación *inicial* por *correo certificado* es la acción en cobro de dinero bajo la Regla 60 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en pleitos de menor cuantía. ¿Cómo puede entonces la mayoría de un plumazo tachar y hacer caso omiso a la jurisprudencia que invariablemente exige la notificación personal en casos electorales, y equiparar el derecho al voto con una acción en cobro de poca monta económica? *Para superar estos principios de debido proceso de ley, la mayoría se ha visto compelida a derogar y reescribir la normativa vigente sobre diligenciamiento personal antes reseñada.* A partir de hoy, el diligenciamiento personal de emplazamientos sólo es un "mecanismo preferido" (opinión mayoritaria, pág. 610) y no de "estricto cumplimiento", tal y como reiteráramos en *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986). *El lenguaje específico que la mayoría cita para apoyar esta nueva doctrina — ad hoc— es aislado y fuera de contexto. Con respeto, estamos ante un mal ejemplo de técnica adjudicativa judicial y un nefasto precedente. En vano hemos tratado de disuadir a la mayoría. Ningún argumento ha sido convincente. Ante esa inflexible postura mayoritaria, no nos queda otra opción que invitar a los miembros de la Judicatura, clase togada y otros lectores —y electores— a una somera, desapasionada e inte-*

*gral lectura del caso de Rodríguez v. Nasrallah, supra, como único medio para que puedan arribar a sus propias conclusiones. De ese modo corroborarán que dicha decisión no resuelve que el emplazamiento personal es cuestión de preferencias y, menos, que haya sido sustituido por meras conveniencias procesales. Todo lo contrario.* Dicha opinión —al igual que la casuística allí incorporada del Tribunal Supremo federal y otros foros estatales— se afianza en que el debido proceso de ley exige el emplazamiento *in personam,* y que la notificación por correo o mediante edictos sólo procede después de efectuadas dichas diligencias en situaciones extremas.

Curiosamente, el caso de *Martin v. Wilks,* 490 U.S. 755 (1989) —que usa la opinión mayoritaria para concluir que los electores marginados son acumulables como parte (opinión mayoritaria, págs. 604–605)— de repente es olvidado en lo verdaderamente fundamental: la reafirmación del "'principio general prevaleciente en la jurisprudencia angloamericana de que una sentencia no obliga *in personam* en un litigio en que no ha sido designado parte *o hecho parte mediante un emplazamiento'".* (Énfasis suplido y traducción nuestra.) *Martin v. Wilks,* supra, pág. 761. Como excepción a la norma *in personam,* dicho Foro federal reiteró sólo dos (2) tipos de pleitos: los de *clase* o los de *representación. Estos dos (2) procedimientos son también —o al menos eran hasta hoy— las únicas exclusiones reconocidas en nuestro derecho vigente.*

La decisión mayoritaria es un retroceso constitucional. No sólo es contraria a las más elementales reglas de debido proceso de ley, sino que deja en *total desamparo* a aquellos electores que por diversas razones no están *ahora* en Puerto Rico. A fin de cuentas, la "ausencia temporal del domicilio, para propósitos de empleo, sin la intención de abandonar su pueblo natal y de adquirir otro permanentemente o por tiempo indefinido, *no puede ser considerada como la decisiva para negar el derecho al sufragio".* (Énfasis suplido.) *P.P.D. v. Admor. Gen. de Elecciones,* supra, págs. 260–261. "O hay que notificar a las partes, o no hay que hacer notificación. Si lo primero, la forma acordada no es la legal; si lo segundo, lo hecho no pasa de ser una redundancia." *Márquez v. Junta Insular de Elecciones,* 41 D.P.R. 1, 7 (1930).

¿Es que las Reglas de Procedimiento Civil —sobre acumulación de partes y consolidación— se van a aplicar con rigor

*—aunque discrecionalmente de manera errónea—* y, sin embargo, las imprescindibles para adquirir jurisdicción *in personam* se van a descartar? Es una paradoja invocar la Regla 16 de Procedimiento Civil, *supra,* con miras a remediar una violación al debido proceso de ley de esos electores marginados por tantos meses, y negarse simultáneamente a aplicar y exigir los requisitos reglamentarios y jurisprudenciales reconocidos que rigen la expedición de emplazamiento, diligenciamiento personal y edictos, incluso los términos de veinte (20) y treinta (30) días, respectivamente, prescritos en la Regla 10.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para los electores demandados formular sus contestaciones. *O las cosas se hacen bien y se adquiere jurisdicción a los fines visualizados, o no se hacen y no se adquiere.* Sinceramente, la laxitud de la opinión mayoritaria y su diseño inconstitucional es prueba fehaciente de que subsisten todavía *las categorías inconstitucionales* de electores de *primera* y *de segunda* clase. (Énfasis suplido y en el original.) *Granados v. Rodríguez Estrada II,* supra, págs. 668–671, opinión disidente.

## XI

Dos (2) notas adicionales. Primero, advertimos que el mandato de acumulación y citación ilegal lo ha circunscrito la mayoría del Tribunal a mil doscientos ochenta (1,280), que es el grupo de electores añadidos a mano. *Al así hacerlo ignoran los derechos de más de quinientos (500) electores* —correspondientes a los grupos que iniciaron sus papeletas o cuyos votos fueron arrestados el 7 de diciembre— que están esencialmente en igual situación. ¿Qué justificación hay para esta disimilitud? ¿Acaso han olvidado que ya el propio foro de instancia reconoció que estos otros dos (2) grupos nunca fueron notificados de la determinación de la Comisión Estatal de Elecciones que se negó a adjudicar sus votos y, por ende, les asistía el derecho potencial de cuestionar esa determinación administrativa en cualquier momento? T.E. Superior de 7 de agosto de 1989, págs. 73–74 y 82. Y segundo, han optado por ordenar que a los electores que reclamaron en la

corte federal se les notifique personalmente, pero a los otros no. Nuevamente, ¿por qué esta diferencia en el trato? La única explicación posible es que existe un desmedido interés en limitar o podar la jurisdicción de la corte federal.

## XII

Para concluir, un (1) año después de las elecciones, ¿cuáles son los estados procesales de los pleitos? En el de impugnación instado por Granados Navedo ya desfiló toda la prueba y sólo resta que las partes presenten sus respectivos alegatos de derecho. En la acción independiente de la señora González Suárez, la prueba había desfilado *antes* del mandato de consolidación y acumulación de este Tribunal de 29 de septiembre de 1989. *Para todos los efectos ambos están sometidos.*

Al presente, la demandante González Suárez justificadamente se niega a suscribir una alegación de demanda enmendada. El candidato impugnado, Acevedo Pérez, y el Comisionado Electoral del P.P.D., Báez Galib, en comparecencia conjunta implícitamente admiten que les asiste la razón. A su entender todo se debe a una malinterpretación de lo resuelto por la mayoría el 29 de septiembre de 1989. Insisten en que la acumulación de los electores excluidos como partes corresponde a la Comisión Estatal de Elecciones, y nos solicitan que así lo resolvamos sumariamente. En la alternativa, que ordenemos a la Comisión Estatal de Elecciones notificar las alegaciones que Acevedo Pérez está dispuesto a enmendar.

Por su parte, la Comisión Estatal de Elecciones se opone. Aduce que no le corresponde esa tarea, porque fue ella precisamente la que determinó que esos electores —que ahora se acumulan indebidamente como parte indispensable— no tienen derecho a votar. Confiesan que no tienen mayor interés en cuál de las partes deberá hacerlo.

*La caricaturesca situación suscitada es fiel reflejo de la incorrección de la opinión mayoritaria del Tribunal de 29 de septiembre de 1989.* Queda demostrado con el hecho que el mandato es incumplible.

Con la decisión mayoritaria, hoy nos encontramos con la insólita situación en que cuatro (4) Jueces redactan las alegaciones de una demanda, cuya suficiencia estará sujeta a ser cuestionada por más de mil electores afectados, amén de la demandada Comisión Estatal de Elecciones. Así se pretende obligar a la demandante González Suárez a demandar a nombre de otros electores —con los cuales ella no tiene ninguna relación— sin que posea tal capacidad y autorización de ellos. Si accediéramos a la petición de Acevedo Pérez y de Báez Galib, estaríamos permitiéndole a aquél, como demandado, que asumiera el típico papel de demandante en *otro* pleito en el que definitivamente no es parte. Y, en cuanto a la Comisión Estatal de Elecciones, la anomalía es patente.

*Con todo el respeto, estamos ante una "mogolla judicial" sin precedentes.* El papel, aún de tamaño legal, aguanta todo lo que se le escriba, incluso decisiones *ESTÉRILES* e *INJUSTAS*. Nuevamente, *"por una vertiente errónea, [se] mutila indirectamente el esquema procesal del pleito especial de impugnación; paraliza, complica y atrasa su solución, y replantea un potencial conflicto jurisdiccional con la corte federal. Crea un desbalance y entremezcla conceptos sustantivos relativos a las causas de acción con los principios de economía procesal, como la acumulación de partes y la consolidación y sus efectos. Desde su incepción, el diseño es inconstitucional . . . .* [R]esulta *imperativo* que sin dilación alguna decretemos la nulidad de la *certificación* expedida *precipitada y erróneamente a favor de Acevedo Pérez* y *ordenemos una nueva elección en el Municipio de San Juan.* ¿Cuánto más habremos de esperar? ¿Por qué seguir complicando el pleito y retrasando ese remedio? *Todavía estamos a tiempo para fijar correctamente las coordenadas que en el*

*plano electoral y constitucional el recurso nos presenta.”* (Énfasis en el original.) *Granados v. Rodríguez Estrada II,* supra, págs. 681–682, opinión disidente.

La inusitada premura de la mayoría, al certificar hoy su sentencia y devolver simultáneamente el mandato, nos ha impedido desarrollar otros argumentos y afinar ciertos conceptos en pocas horas. PARA HACER JUSTICIA, POR FORTUNA, SIEMPRE HABRÁ UN MAÑANA.