López Vilanova, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Miramar Construction Corp. y Fajardo Partners, S.E., apelan de la sentencia enmendada dictada sumariamente por el Tribunal de Primera Instancia, Sala Superior de Humacao, que les ordenó pagarle al Municipio de Fajardo determinadas sumas en concepto de arbitrios de construcción. Analizados los escritos de las partes y los voluminosos apéndices, confirmamos al foro de instancia en cuanto a la improcedencia de la reclamación de reembolso. En lo que refiere a su dictamen contra una parte indispensable no incluida y su determinación de que el Municipio puede aún cobrar una alegada deuda del apelante, revocamos.
Los hechos que dan lugar al presente recurso se originan el 21 de diciembre de 1992 cuando el Municipio de Fajardo presentó una demanda en cobro de arbitrios de construcción por la cantidad de $224,039.56 contra Miramar Construction Co. (en adelante Miramar). Fundó la misma en la Ordenanza Municipal Núm. 10 enmendada por la Ordenanza Núm. 23, serie 1986-1987, que requería el pago de arbitrios por obra realizada dentro de los límites territoriales del Municipio de Fajardo, (en adelante el Municipio). Los arbitrios en controversia se fijaron sobre los trabajos de construcción realizados por Miramar en tres proyectos de la siguiente manera:
I. Monte Brisas Shopping:
a. El contrato entre Miramar y Supermarket Leasing Co., disponía que una vez otorgado el mismo no podría Miramar cobrar cantidad adicional alguna por concepto de arbitrios.
b. Para obtener y como requisito previo para el permiso de construcción, Miramar fue al Municipio de Fajardo y solicitó que le fueran computados los arbitrios; así se hizo, por una suma total de $60,192.42. 
*773 n. Proyecto Puerta del Este:
a. El contrato celebrado entre Miramar y Fajardo Partners, S.E., disponía que luego de celebrado el contrato no podría cobrarse cantidad adicional por concepto de arbitrios.
b. Miramar solicitó del Municipio nuevamente el cómputo total de arbitrios a pagar por el proyecto. El Municipio calculó el mismo para un total de $36,036.00. 
m. XTRA Consumer Mall:
a. En subasta celebrada por la Fajardo Partners, S.E. el 12 de julio dé 1991 se le adjudicó a Miramar como licitador la realización del proyecto; se le requirió el pago de los impuestos previa obtención del permiso. Alegadamente por conducto de la Oficina del Contralor del Municipio de Fajardo se le informó a Miramar que los arbitrios a pagarse se computaban escalonadamente. Utilizando y previa verificación de las tablas ofrecidas, Miramar calculó la contribución basada en el costo del contrato en una suma de $157,342.00.
b. Una vez le fue adjudicada la subasta Miramar acudió al Municipio para pagar los arbitrios de construcción; se le informó que era una suma de $351,769.52. Miramar sostiene que la suma total a pagar es de $157,342.00, según la propia información ofrecida por el Municipio. El Municipio no aceptó el pago inicialmente; luego de varias reuniones entre las partes se llegó a un acuerdo. Miramar expidió un cheque por la cantidad de $157,342.38. El exceso requerido fue garantizado mediante fianza expedida por American International Insurance Co. of P.R.
Miramar solicitó la desestimación de la demanda presentada por el Municipio apoyado en que la misma, no exponía una reclamación que justificara la concesión de un remedio. Por su parte el Municipio solicitó y obtuvo del tribunal permiso para enmendar su demanda y Miramar contestó negando deber la cantidad alegada.
El 3 de noviembre de 1993 Miramar radicó una reconvención contra del Municipio en la que solicitó la devolución de $250,570.00 pagados al Municipio por concepto de arbitrios cobrados en forma ilegal sobre las mismas obras de construcción. Posteriormente solicitó se dictara sentencia sumaria. Sostuvo en síntesis que tanto el cobro de arbitrios por parte del Municipio como los reclamos en la Réplica a la reconvención donde se incluye como responsable a Fajardo Partners, S.E., (en adelante Fajardo) por la cantidad de $203,847.16 eran ilegales, por ser doble tributación no autorizada por el Estado.
El Municipio contestó la reconvención; además, solicitó se le permitiera enmendar la demanda. Esta vez para incluir como co-demandada a la firma Fajardo Partners, S.E., entidad dueña de dos (2) proyectos objeto de los arbitrios que reclamaba el Municipio en su demanda.
Miramar solicitó la desestimación de esta demanda enmendada. Adujo que en la misma no se le imputaba responsabilidad por los hechos alegados. Nuevamente el Municipio solicitó y obtuvo otro permiso para enmendar la demanda. En ésta el Municipio solicitó el pago de $203,847.14 por los arbitrios supuestamente cobrados por el XTRA Consumer Mall y Punta del Este. En la misma no se reclamó cantidad alguna por concepto del proyecto Monte Brisas. Tampoco se incluyó al dueño de esta obra como parte.
Fajardo contestó la segunda demanda enmendada y presentó demanda contra coparte contra Miramar. Alegó que contractualmente, el pago de los arbitrios de construcción por la obra propiedad de Fajardo correspondían a Miramar en virtud del contrato de construcción habido entre las partes. Posteriormente, fajardo llegó a un acuerdo extracontractual con Miramar y desistió con perjuicio de su demanda contra co-coparte. En virtud del acuerdo, Miramar asumió el pago de cualquier arbitrio de construcción que finalmente se impusiera en este caso y asumió la representación de Fajardd. El Municipio se opuso a esta estipulación. Alegó conflicto entre los intereses de Miramar y los de Fajardo. Nuevamente solicitó permiso para enmendar su réplica el cual fue autorizado por el Tribunal. El 20 de abril de 1995 el Tribunal emitió resolución mediante la cual dispuso de las mociones radicadas hasta ese momento y aceptó la estipulación entre Miramar y Fajardo. Concedió término para radicar escritos. Finalmente el Tribunal dictó sentencia el 14 de agosto de 1995, la cual fue notificada a las *774 partes al día siguiente. Condenó a Miramar a pagar $230,463.14 por concepto de arbitrios sobre los proyectos XTRA Consumer Mall y Puerta del Este y $20,192.42 conjuntamente con el dueño de la obra por concepto de arbitrios de construcción sobre el proyecto Monte Brisas Shopping Mall.
Miramar solicitó reconsideración de la sentencia y el Tribunal concedió término al Municipio para replicar. El 18 de septiembre y notificada al otro día, el Tribunal dictó sentencia enmendada. Redujo la partida adeudada al Municipio a la cantidad de $224,039.56. En cuanto a los fundamentos de la sentencia, el Tribunal sostuvo su posición, de que en este caso no existía doble tributación y por ende procedía la reclamación del Municipio.
En su recurso ante nos, Miramar sostiene que el foro de instancia incidió al: (1) no aplicar al Municipio la doctrina de actos propios y determinar que el Municipio puede cobrar la cantidad que alega le debe el apelante; (2) al dictar sentencia solidariamente contra una parte indispensable que no fue incluida en el pleito; (3) al no aplicar la doctrina establecida por nuestro Tribunal Supremo en Las Piedras Construction v. Municipio de Dorado; (4) al dictar sentencia sumaria por una cantidad mayor a la reclamada.
Se confirma la parte de la sentencia emitida por el tribunal de instancia en cuanto a la improcedencia de la reclamación de reembolso. Se revoca en las demás partes.
n
La Constitución del Estado Lihre Asociado de Puerto Rico otorga a la Asamblea Legislativa el poder de imponer y cobrar contribuciones, pero permite que esta facultad pueda ser delegada a los municipios mediante legislación. A tales efectos el Art. VI sec. 2 de la Constitución expresa:

"El poder del E.L.A. para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa y nunca será rendido o suspendido...."

Bajo este principio constitucional, la Asamblea Legislativa aprobó el 30 de agosto de 1991, la Ley Núm. 81 conocida como "Ley de Municipios Autónomos", que en lo pertinente al caso ante nos establece en su Art. 2.002 que:

"Además de las que se dispongan en otras leyes, el municipio podrá imponer y cobrar contribuciones o tributos de la siguiente manera:

(d) Imponer y cobrar contribuciones, derechos, licencias, arbitrios y otros arbitrios e impuestos, tasa y tarifas razonables dentro de los límites territoriales del municipio, compatibles con las leyes del E.L.A., incluyendo, sin que se entienda como una limitación, por el establecimiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, por la construcción de obras y el derribo de edificios, por la ocupación de vías públicas municipales y por el recogido y disposición de desperdicios."

El art. 5.005, de la ley define los poderes de la Asamblea Municipal para imponer arbitrios dentro de sus límites territoriales. Dispone que la Asamblea ejercerá el poder legislativo en el municipio y tendrá las facultades y deberes sobre los asuntos locales que se confieren en éste, así como aquellas incidentales y necesarias a las mismas. Entre éstas, las de:

"(e) Autorizar la imposición de contribuciones sobre la propiedad; tasas especiales, arbitrios, tarifas, derechos o impuestos dentro de los límites jurisdiccionales del municipio sobre materias no incompatibles con la tributación del Estado con sujeción a la ley." 
De otra parte, la Ley 113 de 10 de junio de 1974, mejor conocida como la Ley de Patentes Municipales establece el cobro de patentes municipales a toda persona dedicada a la prestación de cualquier servicio o a la venta de cualquier bien, negocio financiero y/o cualquier industria o negocio. El importe de la patente municipal se determina mediante la aplicación de la tasa contributiva correspondiente al volumen de negocios que se haya realizado en el municipio.
*775 La Ley de Patentes computa el impuesto a base del ingreso bruto del contratista, equivalente a lo que le pagan por la obra. La Ordenanza Núm. 10 enmendada por la Núm. 23 del Municipio de Fajardo también dispone que el impuesto se determinará en virtud del costo de la obra. Contrario a lo que alega el Municipio estamos ante un esquema de doble tributación. Ambos impuestos recaen sobre el mismo evento económico ya que el ingreso bruto que recibió Miramar está comprendido en el costo total de la obra. Es decir, el arbitrio de construcción y la patente municipal impuesta y pagada por Miramar constituye una doble tributación al recaer ambos impuestos sobre el mismo y único evento-económico, concurriendo así los criterios establecidos por nuestro Tribunal Supremo para identificar este tipo de esquema: (a) misma propiedad; (b) misma entidad gubernamental; (c) mismo período contributivo; y, (d) para mismo fin. Las Piedras Construction v. Municipio de Dorado, opinión de 28 de enero de 1994, 94 J.T.S. 3; Nogama Construction v. Municipio de Aibonito, opinión de 8 de mayo de 1994, 94 J.T.S. 73; Sucn. Giusti v. Tribunal de Contribuciones, 70 D.P.R. 117, 122-123 (1949); Monitor & Boscio Sucrs. v. Sancho Bonet Tes., 61 D.P.R. 67, 69 (1942).
El nombre que se le da a una contribución carece de importancia. La verdadera naturaleza de la misma se fija más bien por su incidencia. Cuando está en controversia el hecho de si una contribución contraviene derechos constitucionales garantizados, no es la forma de la misma, ni su definición o interpretación lo que hace el caso, sino el efecto práctico o las consecuencias de dicha contribución como cuestión de realidad, en su aplicación y funcionamiento. Maristany v. Srio. de Hacienda, 94 D.P.R. 291, 300 (1967); C.R. Vehicle Leasing v. E.L.A., 107 D.P.R. 94, 101-102 (1978). Al momento de otorgarse el contrato de construcción y efectuado el pago de los mencionados arbitrios, no existía disposición alguna en la Ley de Patentes Municipales, supra, que le permitiera al municipio establecer un esquema de doble tributación. 
Establecida la doble tributación, debemos determinar si la acción para recobrar este concepto se presentó a tiempo. Resolvemos en la negativa; la acción había caducado. Nos explicamos.
ni
El Artículo 15.002 de la Ley de Municipios Autónomos, dispone que "[e]l Tribunal Superior de P.R. tendrá jurisdicción exclusiva para entender y resolver a instancias de la parte perjudicada sobre los siguientes asuntos:

"(a) Revisar o anular cualquier acto legislativo o administrativo de la Asamblea, de la Junta de Subasta, del Alcalde o de cualquier funcionario del municipio que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.

(b) Para suspender la ejecución de cualquier ordenanza, acuerdo, resolución u orden de la Asamblea, de la Junta de Subasta, del Alcalde y cualquier funcionario de municipio que lesione derechos garatizados por la Constitución del E.L.A. o por las leyes estatales.

(c).
(d).

En los casos contemplados bajo los incisos (a) y (b), la acción judicial sólo podrá ejercitarse dentro de los primeros veinte (20) días a contarse desde la fecha en que el acto legislativo o administrativo haya sido realizado o que la ordenanza, resolución, acuerdo u orden haya sido promulgado o comunicado a la parte querellante, a menos que se disponga otra cosa por ley."

En Nogama Construction v. Municipio de Dorado, supra, págs. 11959-60, el Tribunal Supremo resolvió que el térmimo de veinte días (20) se contará a partir de la determinación final del funcionario municipal, una vez se agoten los remedios correspondientes. A tal efecto determinó que es de una decisión emitida por la división de finanzas de los municipios, que se activará el término de veinte días para solicitar la revisión, toda vez que tal notificación constituye un requisito del debido proceso de ley.
En el caso ante nos, el 6 de octubre de 1992, el Municipio, a través de su representación legal, notificó *776 mediante correo certificado el desglose de las reclamaciones, por concepto de arbitrios alegadamente adeudados por Miramar. No es sino hasta casi un año después de radicada la demanda en su contra y tres (3) años después de efectuado el pago que por primera vez Miramar cuestiona la ilegalidad del cobro por arbitrios al amparo de la Ley de Patentes, supra.
Entendemos que el término de caducidad comenzó a decursar desde que se efectuó el pago del arbitrio de construcción. De no haberse efectuado el pago por razón de la impugnación por parte del contratista, entonces, sería aplicable la norma de Nogama.
Por ello, es tardía la reclamación de Miramar, de que se le devuelva lo que pagó en concepto de arbitrios al Municipio. No erró el Tribunal al así resolver.

TV

El Municipio alegó, y así lo sostuvo el foro de Instancia en su sentencia, que Miramar adeuda determinada suma en concepto de arbitrios debido a que el Municipio incurrió en un error en el cálculo del mismo. El apelante sostiene que el Tribunal de Instancia incidió al no aplicar la doctrina de actos propios a esta reclamación. Tiene razón.
A nadie le es lícito conducirse contra sus propios actos. El contenido de este principio tiene su fundamento y raíz en el principio general del Derecho que ordena proceder de buena fe en lá vida jurídica. El comportamiento contradictorio no tiene lugar en el derecho y debe ser impedido. Diez Picazo, La Doctrina de los Propios Actos, pág. 151. Cónsono con esta doctrina, una parte en un contrato no puede asumir una conducta contradictoria a la que asumió primeramente creando con tal conducta un estado de derecho distinto. El contenido de eticidad de cada acto debe sin embargo, examinarse a la luz de sus circunstancias particulares, pero el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica. Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585, 588 (1981).
En el caso que nos ocupa, el cobro de los arbitrios de construcción de todas las edificaciones erigidas por Miramar fue calculado por el Municipio de Fajardo a base de una fórmula específica. Alega el Municipio que computó un arbitrio menor al que en realidad debió pagarse. En todo momento y de buena fe Miramar utilizó el cómputo que le suplió el Municipio para determinar la cifra por la cual licitaría en las subastas de cada proyecto. De manera que, aceptando las cifras calculadas por el Municipio, Miramar pagó sin oponerse a las mismas y en plena confianza. "[L]a conducta vinculante o primera debe ser jurídicamente eficaz. Por lo tanto, si esta primera conducta es inválida se puede volver lícitamente contra ella..." A. Borda, La teoría de los actos propios, Buenos Aires, Ed. Abeledo-Perrot, 1987, pág. 73; L. M. Vives, La doctrina de los actos propios, 1987, B. Rev, Jur. Arg. La Ley 953 (1987).
Vista la totalidad de las circunstancias en este caso, el reclamo del Municipio es improcedente, no sólo porque niega un trato justo y equitativo a Miramar, sino que además le estaríamos permitiendo un enriquecimiento injusto a favor del Municipio de Fajardo. Ello así, porque para las fechas en que éste requirió el pago de arbitrios a Miramar el mismo era considerado ilegal por constituir una doble tributación. Miramar no puede solicitar el reembolso de lo pagado pues su acción caducó. Sin embargo el cobro de los arbitrios restantes alegados por el Municipio continuó siendo ilegal para las fechas pertinentes a esta acción. No sólo porque el cobro era indebido sino también porque vulneró la buena fe con la que Miramar pagó los arbitrios. "[E]n nuestra jurisdicción es aceptable la norma de que bajo circunstancias apropiadas, un demandante pueda invocar contra el Estado la doctrina de actos propios, impedimento en equidad y de la buena fe". Berrios v. U.P.R., 116 D.P.R. 88, 98 (1985); Figueroa Cancel v. E.L.A., 114 D.P.R. 684 (1983).
Por tal razón el Municipio está impedido de cobrar el exceso requerido en pago de arbitrios mal calculados por él y que tuvo como resultado el desarrollo de otros contratos amparados en la presunción de que los cómputos efectuados por el Municipio eran correctos.
V
Finalmente Miramar sostiene que el tribunal de instancia erró al imponerle a ésta y al dueño de Monte Brisas *777 Shopping Mall responsabilidad solidaria sobre el pago de arbitrios de construcción, toda vez que esta parte no fue incluida en el pleito. Tiene razón.
La Regla 16.1 de las de Procedimiento Civil, dispone que "[l]as personas que tuvieren un interés común sin cuya presencia no puede adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandados según corresponde. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada
Será parte indispensable aquella persona cuyos derechos o intereses podrían quedar destruidas o inevitablemente afectadas por una sentencia dictada, estando ausente la misma. Reyes v. Cantera, Opinión de 24 de enero de 1996, 96 J.T.S. 9; Torres v. Aponte, Opinión de 7 de febrero de 1994, 94 J.T.S. 12. Dicha regla tiene su fundamento en el debido proceso de ley, pretende evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. "[N]o es suficiente que la parte ausente haya tenido oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia." Granados Navedo v. Rodríguez, 124 D.P.R. 1 (1989); González Suárez v. Rodríguez Estrada, 124 D.P.R. 749 (1989). Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil, Publicaciones J.T.S., pág. 105 (suplemento 1994).
El foro de instancia erró al dictar sentencia contra el dueño de Monte Brisas. Este no era parte en este pleito. No debemos perder de perspectiva de que estamos ante una sentencia sumaria, donde el tribunal no tuvo ante sí el desfile de prueba para rebatir el hecho de que la solidaridad no se presume, que tiene que ser expresa. Segundo, el propio municipio presentó un escrito de desistimiento sin perjuicio respecto al proyecto Monte Brisas, por el cual ahora impuso responsabilidad el tribunal. Tal como plantea Miramar es precisamente este tipo de actuación la que las reglas de procedimiento civil, supra, quieren evitar la multiplicidad de pleitos y reclamaciones. Finalmente, tampoco adquirió dicho foro jurisdicción sobre esa persona por lo que la sentencia es nula respecto a esa parte.
Procede en consecuencia se revoque aquella parte de la sentencia condenando al pago por responsabilidad solidaria contra Miramar y el dueño de Monte Brisas Shopping Mall.
Resuelta la aplicación de la doctrina de actos propios resulta innecesaria la discusión del tercer error.
VI
Con estos antecedentes se confirma la parte de la sentencia emitida por el tribunal de instancia en cuanto a la improcedencia de la reclamación de reembolso. Se revoca en las demás partes.
La Juez Fiol concurre con el resultado, atendidas las circunstancias particulares del caso.
Notifíquese.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA184
1. Aprobada el 22 de abril de 1987.
2. Cheque Núm. 009590, expedido el 15 de enero de 1990 por la mencionada cantidad.
3. Cheque Núm. 016273, expedido el 27 de marzo de 1991 a favor del Municipio de Fajardo.
*778 4. (a) de O a $1,000.000.00 - 4%
(b) de $1,000.000.00 a $5,000.000.00 - 2%
(c) sobre $5,000.000.00 - 1%.
5. Cheque Núm. 020028, expedido el 22 de octubre de 1991.
6. 21 L.P.R.A. ses. 4001 et. seq.
7.21 L.P.R.A. sees. 651 a 652(y).
8. "[. ] "volumen de negocios" significa los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde éste mantenga oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, lugar de construcción o cualquier otro tipo de organización de industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios. [...]" 21 L.P.R.A. see. 651 a (2),(3),(6)(A)
9. La imposición del pago de patentes municipales sobre un volumen de negocios es que "el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas allí a cabo". Lever Corporation v. Alcalde de San Juan, opinión de 7 de marzo de 1996, 96 J.T.S. 29; Coca Cola Company v. Municipio de Carolina, opinión de 27 de mayo de 1994, 94 J.T.S. 79.
10. La Ley Núm. 93 de 17 de noviembre de 1992, enmendó la sección 3 de la Ley de Patentes Municipales, supra a los fines de facultar a los municipios para el establecimiento de doble tributación.
11. 21 L.P.R.A. 4702.
12. En Nogama, se interpretó el Art. 11.02 de la Ley Orgánica de los Municipios, Ley Núm. 146 de 18 de junio de 1980. Esta fue derogada por la Ley de Municipios Autónomos, supra. No obstante el artículo pertinente al caso ante nos permaneció inalterado.
13. "[Tjratándose de una acción de impugnación del cobro de un arbitrio de construcción resulta forzosa la conclusión de que el término de veinte días comenzó a decursar a partir de la notificación final de la decisión administrativa del Director de Finanzas del Municipio requiriéndole el pago de los arbitrios." Sentencia del Tribunal Supremo de Puerto Rico de 24 de abril de 1996, Bird Construction v. Municipio de Naguabo, AC-96-26.
14. Los elementos necesarios para la aplicación de esta norma jurídica son los siguientes: (a) determinada conducta de un sujeto; (b) que haya engendrado una situación contraria a la realidad, es decir, aparente, y de tal manera susceptible de influir en la conducta de los demás; (c) que sea base de la confianza para otra parte que haya procedido de buena fe, de modo que haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. Int. General Electric v. Concrete Builders, 104 D.P.R. 871, 873 (1976).
15. Buena fe, como normativa interpretativa, significa confianza, seguridad y honorabilidad basada en ella. La palabra "fe", fidelidad, quiere decir que una de las partes se entrega confiadamente a la conducta "leal" de la otra. Comentarios a las reformas del Código Civil, Madrid, Ed. Tecnos, 1977, Vol. I, pág. 368. La actuación contraria a los propios actos del titular es uno de los supuestos típicos del ejercicio de derechos subjetivos en contravención al principio de la buena fe. Puig Brutau, op.cit., págs. 418-19.
16. Los parámetros para el uso de este principio jurídico son:

"a) no puede invocarlo quien procede de mala fe, ni cuando su aplicación violentaría un criterio de política pública encarnado en la Constitución o las leyes del País:

b)no se puede invocar cuando lo que no se ha seguido en ley es fácil de subsanar o enmendar;

c) aplica dentro de algunas circunstancias a los organismos administrativos por lo cual se podría imponer responsabilidad a un municipio que se beneficia de sus actos ultra-vires, beneficiándose de acuerdos nulos o anulables y luego pretende eludir toda responsabilidad basándose en que hay una cuestión de política pública". Plan de Salud v.
*779 Alcalde, 114 D.P.R. 697, (1980).
Para determinar el enriquecimiento injusto, deben estar presentes los siguientes requisitos: 1) existencia de un enriquecimiento; 2) un correlativo empobrecimiento; 3) la conexión entre empobrecimiento y enriquecimiento; 4) falta de causa que justifique el enriquecimiento; y 5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa, Hatton v. Municipio, Opinión de 12 de enero de 1994, 94 J.T.S. 2; Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 823 (1988), citando a J. Santos Bruz, Comentarios al Código Civil y Compilaciones Forales,Tomo XXIV, Madrid, 1984, págs. 27-28.
17.32 L.P.R.A. Ap. III.
18. Sentencia dictada por el Tribunal Supremo de P.R. el 10 de noviembre de 1989.